## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN WARWICK, on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **ILLINOIS WAGE PAYMENT AND COLLECTION ACT** |
| SCHNEIDER NATIONAL, INC. and SCHNEIDER FINANCE, INC., | **DEMAND FOR A JURY TRIAL** |
| Defendants, | |

Plaintiff, John Warwick, by and through his undersigned attorneys, hereby brings this Class Action Complaint on behalf of all others similarly situated, against Defendant Schneider National, Inc. and Schneider Finance, Inc. (collectively "Defendants"), and alleges as follows:

## I.       NATURE OF CASE

1.       This is a putative class action arising out of Defendants' unlawful scheme of misclassifying their over-the-road truck drivers ("Drivers") as independent contractor "owner-operators," rather than employees.

2.       Defendants are freight and cargo companies providing long-haul trucking services in Illinois and nationwide. Defendants hire the Drivers to perform this actual labor required to accomplish this core function of their business.

3.       Under well-established law, Defendants are the legal employers of the Drivers. Yet, Defendants have labeled their Drivers as independent contractor "owner operators." The distinction between an independent contractor and an employee is critical because the State of Illinois provides certain protection to employees, but not independent contractors, under the Illinois Wage Payment and Collection Act ("IWPCA").   Defendants are using an unlawful

misclassification scheme to pass their costs of doing business onto the Drivers, thereby evading critical protections they owe to the Drivers as their legal employers, under the IWPCA.

4. Throughout the proposed class period, Defendants have employed thousands of Drivers in Illinois to make deliveries to the customers of Defendants' clients all across the continental U.S. As discussed below, while Defendants classify the Drivers as independent contractor "owner-operators," it treats them as employees in every material respect.

5. Under Illinois law, the Drivers are Defendants' "employees" unless Defendants can demonstrate <u>all of the following</u>: "(1) [Defendants] did not exert control and direction over the performance of [the Drivers'] work, (2) [the Drivers] performed [ ] work outside all of [Defendants'] places of business, and (3) [the Drivers were] in an independent established trade, occupation, profession or business." *See Spates v. Roadrunner Transporation Sys., Inc.*, 2016 WL 7426134, at *3 (N.D. Ill. Dec. 23, 2016) (quoting 820 Ill. Comp. Stat. Ann. 115/2 and *Marcus & Millichap Inv. Servs. of Chicago, Inc. v. Sekulovski*, 639 F.3d 301, 310 (7th Cir. 2011)). Defendants cannot satisfy even one of these three necessary elements to establish their affirmative defense that the Drivers are correctly classified.

6. <u>No Freedom from Control</u>: Defendants control the performance of Drivers' work, both under the contract of service with Defendants and in fact. Indeed, Defendants determine the appearance of the truck (including by requiring that all trucks bear the "Schneider" logo); require Drivers to operate under Defendants' own Department of Transportation operating authority; prohibit Drivers from working for other companies while also working for Defendants; require that Drivers be "qualified" to work for Defendants; require Drivers to submit to a background check; control the limited pool of route assignments available for the Drivers; determine the freight being transported and the customers to whom it is being delivered; fix the Drivers' rate of pay;

retain the exclusive right to negotiate prices with the customers; decide who is permitted to drive or ride in the trucks; require Drivers to purchase and use Defendants' own trucking insurance; determine whether Drivers may have time off from work; and monitor the Drivers' work through their dispatchers, the GPS systems installed in the trucks, and through the Drivers' required reporting using the Truck's electronic "Qualcomm" system, among other forms of control.

7.     <u>Work Performed Within Defendants' Facilities and in the Usual Course of their Business</u>:  Drivers perform work that is firmly within the usual course of Defendants' trucking business, and inside Defendants' business locations. Defendants are in the business of delivering loads to their customers, and the Drivers are Defendants' essential labor force for carrying out this core function.  Moreover, the Drivers rely on Defendants' trucks and network of facilities, including Defendants' numerous distribution centers and warehouses, to retrieve and drop off freight.

8.     <u>No Independently Established Trade, Occupation, Profession or Business</u>: Defendants prohibit Drivers from maintaining or advertising an identity separate from Defendants for services of the same type they are contracted to perform for Defendants. Nor are the Drivers in independently established trades, occupations, professions or businesses. The Drivers work in a job that is synonymous with Defendants' core function of transporting freight, and offer no independent trade. Nor are they operating "independent businesses" that advertise services or solicit clients aside from Defendants' customers.

9.     By misclassifying the Drivers as independent contractors, rather than as employees, Defendants have unlawfully evaded their obligations to pay their Drivers the full wages they are due under applicable law.

10.     Under applicable law, employers must reimburse employees for all necessary

expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer. 820 Ill. Comp. Stat. Ann. 115/9.5.

11.     Here Defendants pass their costs of doing business—such as fuel, maintenance, and truck leasing costs, among numerous others—onto their Drivers. Defendants have no formal policy or procedure for reimbursing expenses. All of these expenses are incurred within the Drivers' scope of employment and are directly related to the services being provided. Indeed, the trucks could not run without fuel and maintenance, and Defendants would not be able to transport freight for their customers without the trucks themselves.

12.     Also under applicable law, employers also are barred from making deductions from their employees' pay, unless such deductions are required by law; to the benefit of the employee; in response to a valid wage assignment or wage deduction order; or made with the express written consent of the employee, given freely at the time the deduction is made. 820 Ill. Comp. Stat. Ann. 115/9.

13.     Here Defendants deduct their own costs of doing business from the Drivers' paychecks every pay period, even though these deductions are not required by law or in response to a valid wage assignment or wage deduction order, are to the detriment of Drivers, and are not made with express written consent freely given by Drivers at the time of each deduction.

14.     Defendants require Drivers to sign a common "owner-operator" contract as a condition of employment, and to further their misclassification scheme.

15.     The "owner-operator" agreement sets forth a uniform compensation schedule that pays a flat rate based on a percentage of each delivery. Defendants require Drivers to pay for tools, supplies, license plates, cell phones, and cell phone bills as out of pocket expenses.

16.     Despite being labeled as "owner-operators" in the unlawful contract, the vast

majority of Drivers do not own or even supply their own trucks, but rather rely on Defendants' truck leasing arm, "Schneider Finance" to provide the trucks. Defendants then deduct the truck leasing and maintenance costs directly from the Drivers' pay. Even the Drivers who do provide their own trucks must emblazon the trucks with Defendants' corporate logo and drive only under Defendants' Department of Transportation operating authority.

17.     In addition, Defendants take deductions from Drivers' wages each pay period for truck insurance, fuel, oil and maintenance, among other costs.

18.     Aside from the onerous expenses and deductions, Drivers routinely work 12-14 hours per day to meet Defendants' heavy service demands. These long hours are but one aspect of the harsh working conditions engendered by Defendants' policies. For example, Defendants impose such severe time constraints on the Drivers' deliveries that they often must work while subjected to extreme fatigue and without being able to tend to basic bodily needs. For instance, Plaintiff, John Warwick, regularly had to keep cups and trashcans at hand in the truck for the purpose of relieving himself when the time pressures of the freight transport did not permit a road stop to use the restroom.

19.     The combination of onerous deductions, extensive out-of-pocket expenses, long hours and modest pay leads to the troubling outcome of Drivers taking home less than minimum wage in many workweeks. For instance, there were many workweeks in which Mr. Warwick took home less than $500 after out-of-pocket expenses, despite having worked over 80 hours during the week.

20.     Neither Plaintiff, nor the other Drivers, agreed to pay Defendants' expenses out of pocket or to have Defendants' expenses deducted from their wages as employees, whether at the time of signing the "owner-operator" contract, or at the time of such deductions. Rather, Plaintiff

and the other Drivers were required to sign a document as a condition of employment, purporting to classify them as "independent contractors" and wrongly representing Defendants' own business expenses as the Drivers' expenses. Then, Defendants proceeded to deduct their own business expenses on a pay period-by-pay period basis, without obtaining the express written consent of the Drivers, given freely at the time the deduction is made.

21.     Plaintiff worked as an over-the-road truck driver for Defendants from approximately October 2013 through November 2015. Plaintiff seeks to represent other former and current over-the-road truck drivers against Defendants for violating Illinois wage and hour laws stemming from their misclassification of the employee Drivers as independent contractor "owner-operators." Plaintiff seeks injunctive and declaratory relief, restitution for unlawful deductions, reimbursement for all expenses incurred as required by employment, liquidated and/or other damages as permitted by applicable law, penalties, interest, attorneys' fees, and costs.

22.     Plaintiff, on his own behalf and on behalf of all Class members, brings this action pursuant to the Illinois Wage Payment and Collection Act: 820 ILCS §§ 115/1 et seq. Plaintiff challenges Defendants' policies of: (1) misclassifying Drivers as owner-operators rather than employees; (2) taking unlawful deductions from Plaintiff's and the proposed Class' wages; (3) failing to reimburse Plaintiff and the proposed Class for necessary and reasonable business expenses; and (4) failing to timely pay Plaintiff and the proposed Class full wages and final compensation upon separation. Plaintiff seeks compensation, damages, penalties, and interest to the full extent permitted by the Illinois Compiled Statutes (ILCS). 735 ILCS §§ 5/2-1303; 820 ILCS §§ 115/14.

23.     Plaintiff, on behalf of himself and all others similarly situated, also requests reasonable attorneys' fees and costs pursuant to, inter alia, 735 ILCS §§ 5/5-108 and 820 ILCS §§

115/14.

## II.     PARTIES

24.     Plaintiff and the proposed Class members are current or former exempt, over-the-road truck drivers who have performed work for Defendants in Illinois, signed an "owner-operator" agreement with Defendants, and classified by Defendants as owner-operators at any time beginning ten years before the filing of this Complaint, through resolution of this action.

25.     Plaintiff John Warwick is an individual over the age of eighteen, and is a resident of Illinois, in Lake County.  Plaintiff worked for Defendants as an over-the-road truck driver throughout Illinois and nationwide, including in this Judicial District, from approximately October 2013 through November 2015.  Plaintiff was paid a flat rate based on a percentage of each delivery from the inception of his employment in approximately October 2013 through termination of his employment with Defendants in November 2015.

26.     Defendant Schneider National, Inc. is a corporation that is incorporated in Wisconsin and is headquartered in Green Bay, Wisconsin. Defendant Schneider National, Inc. does business in the state of Illinois and nationwide, and at all relevant times has been engaged in the business of long-haul trucking in Illinois and nationwide, including in this Judicial District.

27.     Defendant Schneider Finance, Inc. is a corporation that is incorporated in Wisconsin and is headquartered in Green Bay, Wisconsin. Defendant Schneider Finance, Inc.  does business in the state of Illinois and nationwide, and at all relevant times has been engaged in the business of leasing trucks in Illinois, including in this Judicial District.

28.     Throughout this Complaint, any reference to "Defendants" is intended to refer to all Defendants jointly.

29.     At all relevant times, Defendants have done business under the laws of Illinois, has

had places of business in Illinois, and has contracted the proposed Class members in this Judicial District to service.

### III. JURISDICTION

30.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1), because the amount in controversy in this action exceeds $75,000 for Mr. Warwick alone, exclusive of interests and costs, and because the parties are citizens of different states. Plaintiff is a citizen of Illinois, and Defendants are Wisconsin corporations with their principal place of business in Wisconsin, such that complete diversity of citizenship exists.

31.    The Court also has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendants are citizens of a state different from that of the Plaintiff, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

32.    The Court has personal jurisdiction over Defendants because they are entities authorized to do business in the state of Illinois and are registered with the Illinois Secretary of State.  Defendants do sufficient business with sufficient minimum contacts in Illinois, and/or otherwise intentionally avails themselves to the Illinois market through the advertising, marketing and sale of goods and services, to render the exercise of jurisdiction over Defendants by the Illinois court consistent with traditional notions of fair play and substantial justice.

33.    Venue is proper under 28 U.S.C. §1391, because Defendants contract Class members to service and transact business in this Judicial District, Plaintiff Warwick is a resident of this Judicial District, a substantial part of the acts and/or omissions giving rise to the claims occurred in this Judicial District, and Defendants have places of business in this Judicial District.

# IV.    FACTUAL ALLEGATIONS

34.    Plaintiff incorporates herein by reference the allegations set forth above.

35.    During the relevant time period of this action, Defendants have employed, and continue to employ, Drivers to provide long haul delivery services to Defendants' customers.

36.    The Drivers' basic duties stay consistent and the Drivers do not provide additional services to Defendants or their customers.

37.    Drivers work regular schedules for Defendants, often 6-7 days per week, and 12-14 hours per day, in order to meet Defendants' heavy service demands.  As a result, it is impracticable for Drivers to simultaneously take on any other employment outside of Defendants.

38.    These long hours are but one aspect of the harsh working conditions engendered by Defendants' policies. As just one example, Plaintiff, John Warwick, regularly had to keep cups and trashcans at hand in his vehicle for the purpose of relieving himself when the time pressures of his deliveries did not permit a road stop to use the restroom.

39.    While Defendants classify the Drivers as "independent contractors," they treat them as employees in every material respect.

40.    <u>No Freedom from Control</u>: Defendants control the performance of Drivers' work, both under the contract of service with Defendants and in fact. Indeed, Defendants determine the appearance of the truck (including by requiring that all trucks bear the "Schneider" logo); require Drivers to operate under Defendants' own Department of Transportation operating authority; prohibit their Drivers from working for other companies while also working for Defendants; require that Drivers be "qualified" to work for Defendants; require Drivers to submit to a background check; control the limited pool of route assignments available for Drivers; determine the freight being transported and the customers to whom it is being delivered; fix the Drivers' rate

of pay; retain the exclusive right to negotiate prices with the customers; decide who is permitted to drive or ride in the trucks; require Drivers to purchase and use Defendants' own trucking insurance; determine whether Drivers may have time off from work; and monitor the Drivers' work through their dispatchers, the GPS systems installed in the trucks, and through the Drivers' required reporting using the Truck's electronic "Qualcomm" system, among other forms of control.

41. <u>Work Performed Within Defendants' Facilities and in the Usual Course of their Business</u>: Drivers perform work that is firmly within the usual course of Defendants' trucking business, and inside Defendants' business locations. Defendants are in the business of delivering loads to their customers, and the drivers are Defendants' essential labor force for carrying out this core function. Moreover, Drivers rely on Defendants' network of facilities to retrieve and drop off freight, including Defendants' numerous distribution centers and warehouses.

42. <u>No Independently Established Trade, Occupation, Profession or Business</u>: Defendants prohibit Drivers from maintaining or advertising an identity separate from Defendants for services of the same type they were contracted to perform for Defendants. Nor are the Drivers in independently established trades, occupations, professions or businesses. The Drivers work in a job that is synonymous with Defendants' core function of transporting freight, and offer no independent trade. Nor are they operating "independent businesses" that advertise services or solicit clients aside from Defendants' customers.

43. Defendants pass their own costs of doing business—such as fuel, maintenance, and truck leasing costs, among numerous others—onto their Drivers. Defendants have no formal policy or procedure for reimbursing expenses. All of these expenses are incurred within the Drivers' scope of employment and are directly related to the services being provided. Indeed, the trucks

could not run without fuel and maintenance, and Defendants would not be able to transport freight for their customers without the trucks themselves.

44.     Defendants deduct their own costs of doing business from the Drivers' paychecks every pay period, even though these deductions are not required by law or in response to a valid wage assignment or wage deduction order, are to the detriment of the Drivers, and are not made with express written consent freely given by the Drivers at the time of each deduction.

45.     Defendants require the Drivers to sign a common "owner-operator" contract as a condition of employment, and to further their misclassification scheme.

46.     The "owner-operator" agreement sets forth a uniform compensation schedule that pays a flat rate based on a percentage of each delivery.  Defendants requires Drivers to pay for tools, supplies, license plates, cell phones, and cell phone bills as out of pocket expenses.  These tools and supplies include, but are not necessarily limited to: GPS devices, boots, gloves, ropes, dollies, tires, hardhats, and straps for tying down and securing loads.

47.     Despite being labeled as "owner-operators" in the unlawful contract, the Drivers do not typically own or even supply their own trucks, but rather rely on Defendants' truck leasing arm, "Schneider Finance" to provide the trucks. The vast majority of Drivers lease their trucks from Defendant Schneider Finance.  Indeed, Drivers who do not own their own truck or who do own a truck that does not comply with Defendant Schneider National's safety standards must lease trucks from Defendant Schneider Finance. Defendant Schneider Finance is owned, controlled, and operated by Defendant Schneider National.  Defendants then deduct the truck leasing and maintenance costs directly from the Drivers' pay.

48.     In addition, Defendants deduct the following additional costs: (1) truck lease payments; (2) required insurance meeting Defendants' standards; (3) fuel and oil; and (4) a fixed

amount each pay period for future repair and maintenance costs. Regular deductions for future repair and maintenance costs are made whether or not Drivers actually pay out of pocket for such costs. Schneider National does not return such deductions to Drivers in the event that such amount was never expended.

49.     Defendants also require Drivers to use Defendants' approved insurance, meeting coverage thresholds prescribed by Defendants. Drivers must authorize Defendants to sign and negotiate policies on Drivers' behalf. These costs also are deducted directly from the Drivers' pay.

50.     The combination of onerous deductions, extensive out-of-pocket expenses, long hours and modest pay leads to the troubling outcome of Drivers taking home less than minimum wage in many workweeks. As explained above, Mr. Warwick regularly was paid less than minimum wage, such as when he would take home $500 or less after out-of-pocket expenses after working an 80-plus hour week.

51.     Neither Plaintiff, nor the other Drivers, agreed to pay Defendants' expenses out of pocket or to have Defendants' expenses deducted from their wages as employees, whether at the time of signing the "owner-operator" contract, or at the time of such deductions. Rather, Plaintiff and the other Drivers were required to sign a document as a condition of employment, purporting to classify them as "independent contractors" and falsely representing Defendants' own business expenses as the Drivers' expenses. Then, Defendants proceeded to deduct their own business expenses on a pay period-by-pay period basis, without obtaining the express written consent of the Drivers, given freely at the time the deduction is made.

52.     Under applicable law, "employees," such as the Drivers here, are entitled to reimbursement for out-of-pocket expenses incurred for the employer's business, as well as restitution for wrongful deductions of the employer's own business expenses from wages.

53.     By misclassifying Drivers as owner-operators rather than employees, Defendants are evading the expense reimbursement and unlawful deductions laws by passing many of their own costs of doing business onto their Drivers. Defendants subject all Drivers to the same categories of deductions and out-of-pocket costs to cover certain ordinary business expenses of Defendants.

54.     Furthermore, upon voluntary separation or termination of employment, Defendants fail to pay Drivers all accrued compensation including, unlawful deductions from wages, reimbursement expenses, and final compensation.

## V.     CLASS ACTION ALLEGATIONS

55.     *Proposed Class Definition*. Plaintiff brings this case as a class action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). The Class that Plaintiffs seek to represent are composed of and defined as follows:

> "All over-the-road truck drivers who have executed 'owner operator' agreements with Defendant, have performed services for Defendants in Illinois, and have been classified by Defendants as independent contractor 'owner-operators' rather than employees, beginning ten years before the filing of the initial Complaint until the date of Class notice." (the "Class")

56.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23:

a.     *Numerosity*.  Defendants have employed thousands of Drivers in Illinois from 2009 through the present.  Class members are therefore far too numerous to be individually joined in this lawsuit.

b. _Existence and Predominance of Common Questions of Law and/or Fact_. Common questions of law and/or fact exist as to the members of the Class and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the Class. The common questions include the following:

    i. Whether Drivers are independent contractors or employees under the IWPCA cited herein;

    ii. Whether Defendants have exerted control and direction over the performance of Drivers' work;

    iii. Whether Drivers have performed work inside the usual course of Defendants' business or inside the places of business of Defendants;

    iv. Whether Drivers are in independently established trades, occupations, professions or businesses;

    v. Whether Defendants retain the right to control, directly or indirectly, the kinds of equipment the Drivers use;

    vi. Whether Drivers are entitled to be reimbursed and/or paid restitution for paying Defendants' business expenses and having such amounts deducted from their pay;

    vii. Whether Drivers who had their employment relationship with Defendants terminated or voluntarily separated were timely paid final compensation;

    viii. Whether Drivers are entitled to damages for Defendants' failure to timely pay all outstanding amounts of compensation owed;

ix. Whether Defendants have an established written expense reimbursement policy;

x. Whether Defendants' deductions to the Drivers' wages are required by law;

xi. Whether Defendants' deductions to the Drivers' wages are for the benefit of, or to the detriment of Drivers;

xii. Whether Defendants obtained the freely given, express written consent of the Drivers at the time of each deduction from wages;

xiii. Whether Defendants' policies and practices have resulted in violation of one or more of the provisions of the IWPCA cited herein;

xiv. The monetary relief to which Plaintiff and the proposed Class may be entitled as a result of the violations alleged herein.

57. _Typicality_. Plaintiff's claims are typical of the claims of the Class. Defendants' common course of conduct in misclassifying Plaintiff and the other Drivers as independent contractor "owner-operators," taking unlawful deductions from Drivers' wages, failing to reimburse Drivers for necessary and reasonable business expenses; and failing to timely pay all wages due and final compensation upon termination or voluntary separation has caused Plaintiff and the proposed Class to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the proposed Class.

58. _Adequacy_. Plaintiff's claims are typical of the claims of the proposed Class. Defendants' common course of conduct in misclassifying their Drivers as owner-operators caused Plaintiff and the proposed Class to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the proposed Class.

59.  *Superiority*.  The class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible.  Furthermore, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, and avoids the problem of inconsistent judgments.

## FIRST CAUSE OF ACTION

**Unlawful Deductions from Wages**
**820 Illinois Compiled Statutes §§ 115/2, 115/4, and 115/9**

60.  Plaintiff hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

61.  At all relevant times, Plaintiff, and proposed members of the Class, were employees covered by the Wage Payment and Collection Act.  820 ILCS § 115/2.

62.  At all relevant times, Defendants were employers subject to the Illinois Wage Payment and Collection Act.  Id.

63.  Pursuant to 820 ILCS § 115/4, all wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned.

64.  Pursuant to 820 ILCS § 115/9, it is unlawful for employers to take deductions from employees' wages unless such deductions are: required by law; to the benefit of the employee; in response to a valid wage assignment or wage deduction order; made with express written consent of the employee, given freely at the time the deduction is made; or in certain instances made by a

municipality or housing authority of a municipality.

65.     The Illinois Wage Payment and Collection Act defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any basis of calculation."  820 ILCS § 115/2.

66.     Defendants took deductions from employees' wages that were not: required by law; to the benefit of the employee; in response to a valid wage assignment; made with express written consent of the employee, given freely at the time the deduction was made; or made by a municipality or housing authority of the municipality.

67.     Defendants did not obtain the freely given, express written consent of Plaintiff or the other Drivers to deduct their own business expenses from their wages, whether at the time of signing the "owner-operator" contract, or at the time of such deductions.

68.     Under these statutes, employers cannot make employees the insurers of the business losses, or otherwise pass the ordinary business losses of the company onto the employee.

69.     Defendants have violated 820 ILCS § 115/9 by unlawfully taking deductions from Plaintiff and Class member's compensation to pass certain ordinary business expenses of Defendants onto the Drivers, including but not limited to; truck lease payments, insurance premiums, and fuel, oil, and maintenance costs, among other expenses.

70.     Because Defendants have taken unlawful deductions from the Class members' compensation, they are liable to Plaintiff and Class members for the compensation that should be paid, but for the unlawful deductions under 820 ILCS § 115/9.

71.     Pursuant to 820 ILCS § 115/4, Plaintiff and other members of the Class, are entitled to recover the full amount of wages earned but not paid every pay period.

72. Plaintiff and the proposed Class are also entitled to recover from Defendants reasonable attorneys' fees, costs, and interest to the full extent permitted by the Illinois Compiled Statutes. 735 ILCS § 5/2-1303; 820 ILCS § 115/14

## SECOND CAUSE OF ACTION

### Reimbursement of Business Expenses
### 820 Illinois Compiled Statutes §§ 115/2 and 115/9.5

73. Plaintiff hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

74. At all relevant times, Plaintiff and proposed members of the Class were employees covered by the Illinois Wage Payment and Collection Act. 820 ILCS § 115/2.

75. At all relevant times, Defendants were employers subject to the Illinois Wage Payment and Collection and Unemployment Insurance Act. *Id.*

76. Pursuant to 820 ILCS § 115/9.5, "An employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer."

77. This section further provides: "'necessary expenditures', means all reasonable expenditures or losses required of the employee in the discharge of employment duties and that inure to the primary benefit of the employer." 820 ILCS § 115/9.5.

78. During the applicable statutory period, Plaintiff and the Class members incurred necessary expenditures and losses in direct consequence of the discharge of their employment duties and as directed by Defendants, for which Defendants did not reimburse Plaintiff and Class members, including but not limited to: fuel, truck leasing costs, oil, tools and supplies, license plates, GPS devices, cell phones, monthly cell phone bill payments, and lights, among other expenses.

79.     Plaintiff and Class members are entitled to recover their unreimbursed expenditures and losses in an amount to be proven at trial.

80.     Plaintiff and the proposed Class are also entitled to recover from Defendants reasonable attorneys' fees, costs, and interest to the full extent permitted by the Illinois Compiled Statutes.  735 ILCS § 5/2-1303; 820 ILCS § 115/14.

### THIRD CAUSE OF ACTION

**Failure to Timely Pay Wages and Final Compensation**
**735 Illinois Compiled Statutes §§ 5/2-1303**
**820 Illinois Compiled Statutes §§ 115/2 and 115/14**

81.     Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

82.     820 ILCS § 115/14 provides:

Any employee not timely paid wages, final compensation, or wage supplements, by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees.

83.     As explained above, for purposes of the act, "wages" are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a timed, task, piece, or any other basis of calculation."  820 ILC § 115/2.

84.     This section further defines "final compensation" as "wages, salaries, and earned commissions, earned bonuses, and the monetary equivalent of earned vacation, and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the two parties."  *Id*.

85.    Defendants willfully failed and refused to, and continue to willfully fail and refuse, to timely pay wages wrongfully deducted and final compensation to Plaintiff and to all other proposed Class members. As a result, Defendants are liable to Plaintiffs and other members of the proposed Class for the amount of such underpayments and damages of 2% of the amount of underpayments for each month following the date of payment during which such underpayments remain unpaid. *Id*.

86.    Plaintiff and the proposed Class are also entitled to recover from Defendants reasonable attorneys' fees, costs, and interest to the full extent permitted by the Illinois Compiled Statutes.  735 ILCS § 5/2-1303; 820 ILCS § 115/14.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a.    That the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23;

b.    For an order appointing Plaintiff as representative of the Class;

c.    For an order appointing Plaintiff's attorneys as Class Counsel;

d.    That the Court find that Defendants have been in violation of 820 ILCS § 115/2 by misclassifying Plaintiff and each member of the proposed Class as owner-operators, instead of employees;

e.    That the Court find that Defendants have been in violation of 820 ILCS § 115/9.5 by making unlawful deductions from wages owed Plaintiff and each member of the proposed Class;

f.    That the Court find that Defendants have been in violation of 820 ILCS § 115/9 by failing to reimburse Plaintiff and each member of the proposed Class for

necessary expenditures or losses incurred within the scope of employment and directly related to services performed for Defendants;

g.      That the Court find that Defendants have been in violation of 820 ILCS § 115/14 by failing to timely pay wages and final compensation to Plaintiff and each member of the proposed Class;

h.      That the Court award to Plaintiff and each member of the proposed Class compensation and restitution for all wages owed, including sums of compensation wrongfully deducted, and for all reasonable and necessary expenditures incurred;

i.      That the Court award to Plaintiff and each member of the proposed Class damages of 2% of the amount of underpayments of compensation wrongfully deducted, and all reasonable and necessary expenditures incurred;

j.      That the Court award to Plaintiff and each member of the proposed Class reasonable attorneys' fees and costs pursuant to 735 ILCS § 5/5-108; 820 ILCS § 115/2; and/or other applicable law;

k.      Any and all other applicable statutory penalties, as provided by law; and

l.      For such other and further relief as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Respectfully submitted,

DATED:  March 26, 2020

John Warwick, as an employee of Defendants, and on behalf of a class of all others who are similarly situated,

By:  _/s/ Michael M. Mulder_

Michael M. Mulder
Elena N. Liveris
The Law Offices of Michael M. Mulder
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Tel: (312) 263-0272
mmmulder@mmulderlaw.com
eliveris@mmulderlaw.com

Joshua Konecky*
Leslie Joyner*
Nathan Piller*
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
jkonecky@schneiderwallace.com
ljoyner@schneiderwallace.com
npiller@schneiderwallace.com

*Pro Hac Vice application forthcoming
Attorneys for Plaintiffs